1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GLEN BUI,

               Plaintiff,

    v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

               Defendant.

CASE NO.    C05-5540RBL

REPORT AND
RECOMMENDATION

Noted for May 5, 2006

       Plaintiff, Glen Bui, has brought this matter for judicial review of the denial of his applications for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

       Plaintiff currently is forty-eight years old.[1] Tr. 777.  He has a high school education, completed one to two years of college, and had past work experience as a survey worker, craft foreman and auto body customizer. Tr. 152, 746, 824, 829.

---

    [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

On June 28, 1995, plaintiff filed an application for SSI benefits, alleging disability as of June 12, 1992, due to low back pain, chronic hepatitis C, memory loss, depression, and post traumatic stress disorder ("PTSD"). Tr. 106-09, 744. That application was denied initially and on reconsideration. Tr. 109-10, 126-27, 281, 283, 744. A hearing was held before administrative law judge ("ALJ") Thomas Ranney on October 31, 1997, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert. Tr. 65-93. On March 30, 1998, a supplemental hearing was held, at which a vocational expert appeared and testified. Tr. 94-105. Plaintiff, again represented by counsel, also appeared, but did not testify. Id.

On May 7, 1998, ALJ Ranney issued a decision, finding plaintiff to be not disabled because he was able to perform other jobs existing in significant numbers in the national economy. Tr. 20-34. Plaintiff's request for review was denied by the Appeals Council on September 15, 1999. Tr. 12. Plaintiff filed a complaint with this Court seeking review of the Commissioner's denial of his application. Tr. 744. Based on the parties' stipulation, on May 22, 2000, the Court remanded this matter to the ALJ to: consider the evidence regarding plaintiff's back impairment to determine whether it was severe; further consider the evidence concerning plaintiff's mental impairments; redetermine plaintiff's residual functional capacity; and further develop the record and conduct additional proceedings as deemed necessary. Tr. 428-29.

On remand from this Court, a second hearing was held before ALJ Marguerite S. Schellentrager on November 13, 2000, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 383-427. On February 2, 2001, ALJ Schellentrager issued a decision, determining plaintiff to be not disabled because he retained the capacity to perform other work existing in significant numbers in the national economy. Tr. 368-82. This decision too was remanded by this Court to the Commissioner on June 13, 2002, to review the medical evidence and determine the extent of plaintiff's mental and physical impairments. Tr. 745, 753-59. The Court also ordered the Commissioner to consider plaintiff's ability to work given his limitations and with the assistance of a vocational expert. Tr. 759.

While action on the above application was pending, on January 31, 2000, plaintiff filed a second application for SSI benefits. Tr. 745, 763-66. That application was denied initially and on reconsideration. Tr. 777, 779, 807-08. On February 1, 2005, a third hearing was held before ALJ Schellentrager pursuant to the most recent remand order noted above, at which a medical expert and a vocational expert appeared and testified. Tr. 1060-95. While plaintiff's attorney also appeared, plaintiff did not, apparently because he felt

that ALJ Schellentrager was biased against him due to a letter she sent to the Commissioner's Agency Office of the Inspector General regarding possible fraud based on his alleged activities. Tr. 958, 1013-16, 1018, 1060-95.

On June 1, 2005, ALJ Schellentrager issued a decision, indicating she was consolidating plaintiff's two applications. Tr. 745. Once more, ALJ Schellentrager determined plaintiff to be not disabled, finding specifically in relevant part:

(1)   at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2)   at step two, plaintiff had "severe" impairments consisting of low back pain and hepatitis C;

(3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)   at step four, plaintiff had the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, which did not preclude him from performing his past relevant work; and

(5)   at step five, in the alternative, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 750-51. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. 20 C.F.R. § 416.1484. The ALJ's decision therefore became the Commissioner's final decision after sixty days. Id.

On August 16, 2005,[2] plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1 and #4). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

(a)   the ALJ erred in failing to find plaintiff's mental impairments to be "severe";

(b)   plaintiff was denied due process because the ALJ was not impartial and failed to fairly and fully develop the record;

---

[2] As indicated, plaintiff's complaint was filed more than sixty days after the Commissioner issued her final decision. A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 404.982, 416.1481, 416.1482. This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)). Because the Commissioner failed to raise the statute of limitations as an affirmative defense in her responsive pleading, the issue is waived, and the undersigned will deal with this matter on its merits.

1    (c)    the ALJ erred in assessing plaintiff's credibility;

2    (d)    the ALJ erred in assessing plaintiff's residual functional capacity; and

3    (e)    the hypothetical question the ALJ posed to the vocational expert failed to include
            all of plaintiff's mental functional limitations.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reason set

forth below, recommends this matter be remanded to the Commissioner for further administrative

proceedings.  While plaintiff requests oral argument in this matter, the undersigned finds such argument to

be unnecessary here.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson

v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

a scintilla but less than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir.

1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

one rational interpretation, the Court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>, 749 F.2d

577, 579 (9th Cir. 1984).

I.    <u>The ALJ's Step Two Analysis Was Improper</u>

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

sequential evaluation process. 20 C.F.R. § 416.920.  At step two of that process, the ALJ must determine if

an impairment is "severe."   <u>Id.</u>  An impairment is "not severe" if it does not "significantly limit" a claimant's

mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), ( c); Social Security

Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes

necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

than a minimal effect on an individual[']s ability to work."  <u>See</u> SSR 85-28, 1985 WL 56856 *3; <u>Smolen v.

Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff

has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work

activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

Plaintiff first argues that in her February 2, 2001 decision, the ALJ failed to follow this Court's May 22, 2000 order directing the Commissioner to further consider the evidence in the record regarding his mental impairments.  The ALJ's February 2, 2001 decision, however, is not the decision currently pending before this Court for review.  In addition, as noted above, this Court already addressed issues plaintiff previously raised with respect to that decision.  Accordingly, the undersigned declines to re-address any such issues with respect to the action currently pending before the Court.

On the other hand, plaintiff also argues the ALJ in her most recent decision again failed to properly evaluate the medical evidence in the record concerning his mental impairments.  The undersigned agrees.  At the outset, the undersigned finds, as plaintiff points out, that it is difficult to discern the ALJ's actual findings regarding the severity of his mental impairments.  For example, on page 4 of her decision, the ALJ found plaintiff's depression, anxiety and PTSD to be severe impairments. Tr. 747.  On the following page, however, she states that his "extensive level of personal activities belie a severe mental impairment." Tr. 748.  Finally, in her "Findings" section, the ALJ states that plaintiff's "alleged mental impairments are not severe based upon" his "actual level of activities and given the history of secondary gain as noted in the previous decision." Tr. 750.  Although the Court certainly reasonably could infer that the ALJ's latter two statements represent her true findings on this issue, this conflict certainly opens such findings to legitimate criticism of lack of clarity.  See Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989) (court itself may draw specific and legitimate inferences from ALJ's opinion).

In any event, even accepting the fact that the ALJ determined plaintiff's mental impairments to be not severe, that determination was improper.  The undersigned agrees with plaintiff that in focusing solely on his "actual level of activities" and "history of secondary gain" to discount the medical evidence in the record indicating his mental impairments had more than a minimal effect on his ability to work, the ALJ improperly acted as her own medical expert. See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ

1   cannot arbitrarily substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d

2   772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before

3   him).  It is not clear, furthermore, that the ALJ even considered the medical evidence in the record

4   concerning plaintiff's mental impairments.

5          Defendant argues the ALJ did reject such medical opinion evidence in referring to the activities in

6   which plaintiff was "extensively engaged." Tr. 746.  However, even assuming it is appropriate to discount

7   medical evidence based solely on evidence of a claimant's activities, because the ALJ did not mention in her

8   step two analysis, or anywhere else in her decision for that matter, any of the medical evidence concerning

9   plaintiff's mental impairments, it is impossible to know on what basis she found that evidence to be

10  outweighed by plaintiff's activities.  Defendant argues the ALJ did not have to address specifically the

11  medical evidence, because the ALJ incorporated her review of such evidence from her earlier decision.  It is

12  clear though, that to the extent the ALJ did so, she merely incorporated her discussion of the medical

13  evidence in the record concerning plaintiff's hepatitis C. See Tr. 748.

14         This does not mean, however, that the ALJ was required to find plaintiff's mental impairments to be

15  severe.  For example, while some of the medical sources in the record found plaintiff suffered from mental

16  impairments that they opined caused more than *de minimis* work-related functional limitations (Tr. 268-70,

17  279, 304, 307-08, 335-36, 357, 359-60, 536, 543-45, 711, 783-86, 797, 882-83, 1039), others did not, or

18  at least did not definitively establish the presence of such limitations. (Tr. 322, 547, 357, 359-60, 625-26,

19  729-30, 768-69, 775, 860, 894, 942, 1028, 1072, 1074).  Rather, on remand, the Commissioner shall

20  address specifically the medical evidence in the record regarding plaintiff's mental impairments, and

21  redetermine whether that evidence supports a finding of severity.

22  II.    Plaintiff's Due Process Rights Were Not Denied

23         The requirements of due process demand "impartiality on the part of those who function in judicial

24  or quasi-judicial capacities." Schweiker v. McClure, 456 U.S. 188, 195 (1982).  Hearing officers who

25  decide social security claims are presumed to be unbiased. Id.  This presumption, however, "can be rebutted

26  by a showing of conflict of interest or some other specific reason for disqualification." Id.  The burden of

27  establishing such a disqualifying interest "rests on the party making the assertion." Id. at 196.  That party

28  must show "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear

1  inability to render fair judgment.'" Rollins v. Massanari, 246 F.3d 853, 858 (9th Cir. 2001) (citing Liteky v.

2  United States, 510 U.S. 540, 555-56 (1994)).  In addition, "actual bias," rather than the "mere appearance

3  of impropriety," must be shown in order to disqualify an ALJ. Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th

4  Cir. 2003).

5          Plaintiff argues that although it is not clear why the ALJ rejected the opinions of those medical

6  sources in the record who indicated his mental impairments were severe, she improperly rejected that

7  evidence in her prior decision by stating that they had been referred by his attorney for purposes of

8  litigation.  It is true that absent "evidence of actual improprieties," the purpose for which a medical report is

9  obtained is not a legitimate basis for rejecting it. See Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996) ("An

10 examining doctor's findings are entitled to no less weight when the examination is procured by the claimant

11 than when it is obtained by the Commissioner.").  Again, however, the ALJ's prior decision is not the

12 decision that is currently pending review by this Court, and, as such, the undersigned declines to address it.

13 In any event, nothing in the ALJ's most recent decision indicates the ALJ discounted the medical evidence

14 this time for that reason.

15         Plaintiff next argues the ALJ could have ordered her own psychological evaluation of him if she was

16 doubtful as to the severity of his mental impairments.  However, an ALJ's duty to further develop the

17 record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for

18 proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  Although, as

19 discussed above, the medical evidence in the record regarding the severity of plaintiff's mental impairments

20 may be conflicting, it was not necessarily so ambiguous or inadequate to allow for a proper evaluation of

21 that evidence.  As such, the undersigned does not find the ALJ was required to obtain the testimony of a

22 medical expert in this case.

23         Plaintiff also argues reversal and remand to a different ALJ is warranted in this case in light of the

24 ALJ's credibility findings, including her findings concerning secondary gain, her failure to follow this

25 Court's previous order with respect to evaluation of the medical evidence in the record regarding his mental

26 limitations, and her acting as her own medical expert.  While the ALJ certainly may have erred, at least in

27 some of these respects as discussed herein, plaintiff has not provided evidence of "actual basis," nor has he

28 shown the ALJ's behavior to have been "so extreme as to display clear inability to render fair judgment."

Rollins, 246 F.3d at 858; Bunnell, 336 F.3d at 1115.

1   In addition, although the ALJ may have submitted a letter to the Agency Office of the Inspector

2   General prior to obtaining an explanation from plaintiff regarding his increased activity levels, she did give

3   him an opportunity to explain that increase at the most recent hearing and prior to the issuance of her most

4   recent decision finding him not disabled.  See Tr. 1060-95.  The record shows, furthermore, that it was not

5   the ALJ who initiated the investigation into possible fraud, but the Office of Appellate Operations. Tr. 958,

6   1063.  It also was the Office of Appellate Operations who recommended the matter be forwarded to the

7   Agency Office of the Inspector General. Tr. 958.  As such, the undersigned cannot say the ALJ's decision

8   to notify that office of plaintiff's increased activities arose to the level of actual bias, or were so extreme as

9   to display a clear inability to render a fair judgment.

10  III.   The ALJ's Assessment of Plaintiff's Credibility Was Proper

11  Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

12  639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination.  Allen, 749

13  F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is

14  based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

15  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

16  as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

17  Cir. 2001).

18  To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

19  disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

20  what testimony is not credible and what evidence undermines the claimant's complaints."  Id.; Dodrill v.

21  Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

22  the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at

23  834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811,

24  818 (8th Cir. 2003).

25  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

26  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

27  testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

28  also may consider a claimant's work record and observations of physicians and other third parties regarding

1   the nature, onset, duration, and frequency of symptoms. Id.

2        A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy

3   the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir.

4   1998).  Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a

5   finding that a proffered reason is not believable, also "can cast doubt on the sincerity of the claimant's pain

6   testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  see also Meanal v. Apfel, 172 F.3d 1111,

7   1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to

8   request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428,

9   1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be

10  suggestive of lower level of pain and functional limitation).  In addition, the ALJ may consider the

11  claimant's daily activities. Smolen, 80 F.3d at 1284.

12        Here, the ALJ found plaintiff to be not credible based on the credibility findings she made in her

13  prior decision, and incorporated into her most recent decision, and on the evidence of plaintiff's increased

14  activity levels subsequent to her prior decision. Tr. 750.  In her prior decision, the ALJ found plaintiff to be

15  not credible for the following reasons:

16      In spite of the claimant's alleged limitations, I note that he has reported that he plays
        guitar with a country band (Ex.22 p.2 dated May 1995), he has reported raking hay
17      (Ex.103 p.38).  He has also asked his doctor to endorse medical problems as preventing
        his compliance with legal requirements: he has used his interferon treatments as an
18      excuse to avoid jail time (Ex.103 p.22 in May 1998 and Ex.103 p.28 in November
        1997); he used his medical condition to avoid court related matters (See: Exhibits 103
19      p.28, 118 p.6) and to avoid house arrest (Ex.103 p.31 in August 1997).  The claimant
        reported that he was apparently "showing terriers" (show dogs) at the time that his
20      house burned recently (Ex.102 p.6).  The claimant apparently had a worker's
        compensation claim in 1996-97 (Ex.103 p.38 references an independent panel exam
21      which noted "non-anatomical findings").  The medical records also refer to a lawsuit by
        the claimant against Mason County for malicious prosecution and false arrest (Ex.102
22      p.6) for which the claimant is demanding $1.3 million.  He also has a lawsuit pending
        regarding his dog's propensity for biting people and the claimant apparently started a
23      foundation to protect his animal (Ex.102 p.6).  All of these activities confirm that the
        claimant retains the ability to manage many complicated issues for purposes of his own
24      secondary gain.  These interests impugn his credibility on the issue of disability.

25      Based upon the above information and secondary gain motivation, I find that the
        claimant is not credible at all.  He has a criminal background including assaults and drug
26      possession convictions (See Exhibits 47 p.2, 53, 44 p.2).  He has been involved in
        multiple lawsuits, and he has a pending lawsuits [sic] which represent overwhelming
27      secondary gain concerns.  He has been referred by his attorney to select physicians for
        purposes of the lawsuit (See: Exhibits 102, 119, AC1).  The lack of objective findings
28      further confirms that his subjective complaints are neither supported nor believable.  In
        addition, I note that the claimant has reported increased back pain after raking hay and

after working on engines, activities that are well above the light exertional level. The claimant reported no side effects of the interferon, and, indeed, he told Dr. Sudduth that he tolerated it well. He also seems to like to spend some time caring for pit bulls. Dr. Butler, who has stated that the claimant is severely limited by his back pain, has also stated that the claimant has no neurological deficits and that back surgery is not recommended. He has stated that the claimant has severe memory deficits, but trusts the claimant to give himself three injections a wee [sic] and daily ribavirin pills to treat his hepatitis. Dr. Butler has repeatedly showed his willingness to do what the claimant asked. He has excused the claimant from serving jail time and repeatedly states that the claimant may be able to work when he is through with Interferon, but keeps the claimant on Interferon for years, in spite of the recommendations from Dr. Sudduth, that the claimant had a good prognosis and that combination therapy would probably not do him any good. The medical records confirm that the claimant has not complied with his interferon treatments (See: Exhibit 99 p.8 where the doctor reports that the claimant has been irregular about getting his shots of interferon). According to the record, aspirin has helped the claimant's back pain and he takes no prescribed medication other than the Interferon and occasional Xanax as he gets anxious concerning scheduled court proceedings.

Tr. 378-79.

Plaintiff argues the above credibility assessment was improper because it largely was premised on the ALJ's finding that secondary gain was involved. As clearly can be seen, however, while this may have been a significant basis for the ALJ's determination to discount plaintiff's credibility, it was not the only reason. For example, the ALJ also discounted plaintiff's credibility in part due to the fact that he was engaging in significant levels of activity (even prior to the ALJ's previous decision), that he had not been fully compliant with recommended treatment, and that his allegations regarding his physical impairments were not entirely consistent with the objective medical evidence in the record, all of which, as discussed above, are proper bases for discounting a claimant's credibility. Plaintiff further argues the fact that the ALJ acted as her own medical expert affected her credibility determination. However, plaintiff offers no evidence or explanation as to how this is so.

In addition, the ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Plaintiff argues this reason for discounting his credibility was improper because none of treating or examining mental health professionals in the record found the presence of secondary gain issues or malingering. However, because the ALJ has sole responsibility for determining credibility, the fact that none of these medical sources noted credibility issues in their reports is irrelevant. See Sample, 694 F.2d at 642; Allen, 749 F.2d at 580.

IV.     The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

        If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.  Id.  It thus is what the claimant "can still do despite his or her limitations."  Id.

        A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record.  Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)."  Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments."  Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."  Id. at *7.

        Here, the ALJ found plaintiff had the residual functional capacity to "lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently."  Tr. 750.  Plaintiff argues that in light of the ALJ's errors in evaluating the medical evidence in the record concerning the severity of his mental impairments, this residual functional capacity assessment is erroneous as well.  The undersigned agrees.  On remand, therefore, after re-evaluating the medical evidence in the record to determine whether plaintiff's mental impairments are severe, the Commissioner also shall redetermine what functional limitations stemming therefrom, if any, should be included in his residual functional capacity assessment.  In addition, the Commissioner shall redetermine whether plaintiff can return to his past relevant work at step four of the disability evaluation process.

V.      The ALJ's Step Five Analysis Was Flawed

        If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-

1  Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157,

2  1162 (9th Cir. 2000).

3       An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

4  posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

5  1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the

6  medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

7  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

8  the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that

9  description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

10  2001).

11       At the hearing, the ALJ asked the vocational expert to consider an individual with plaintiff's age,

12  education and vocational background, and with the ability to perform the full range of light work. Tr. 1084.

13  In response, the vocational expert testified plaintiff would be able to return to his past relevant work and

14  make a vocational adjustment to other work. Tr. 749, 1084-86. Based on this testimony, the ALJ found

15  plaintiff to be capable of both returning to his past relevant work and, in the alternative, performing other

16  work existing in significant numbers in the national economy. Tr. 749-50.

17       Plaintiff argues this finding was improper because the ALJ erred in evaluating the medical opinion

18  evidence in the record concerning the severity of his mental impairments as discussed above. Again, the

19  undersigned agrees. Accordingly, on remand, the Commissioner shall redetermine at step five of the

20  disability evaluation process whether plaintiff is capable of performing other work existing in significant

21  numbers in the national economy. The undersigned, however, rejects plaintiff's assertion that the ALJ was

22  required to accept the mental functional limitations found by Dan Neims, Psy.D. See Tr. 536, 543-45. As

23  discussed above, the medical opinion evidence in the record regarding such limitations is mixed. Thus, a

24  finding that an award of benefits is required based on Dr. Neims opinion is premature.

25  VI.    This Matter Should Be Remanded to the Commissioner for Further Administrative Proceedings

26       The Court may remand this case "either for additional evidence and findings or to award benefits."

27  Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course,

28  except in rare circumstances, is to remand to the agency for additional investigation or explanation."

Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because, as discussed above, issues still remain with respect to the severity of plaintiff's mental impairments, his residual functional capacity, and whether he could return to his past relevant work or perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.  While, also as discussed above, plaintiff's assertion that the ALJ was biased against him has been rejected, the undersigned does find that in light of the ALJ's failure to properly evaluate the medical opinion evidence in the record concerning his mental impairments despite being provided by the Court and the Commissioner with two chances to do so, this matter should be given to a different ALJ on remand.  Further, although the undersigned declines to require the Commissioner to obtain the testimony of a medical expert and a vocational expert on remand, she shall obtain such testimony if she deems it necessary to fairly and fully develop the record.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 5, 2006**, as

1    noted in the caption.

2           DATED this 13th day of April, 2006.

3

4

5                                                    Karen L. Strombom
                                                     United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 14